IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

BYRNE MARTIN MESTAS,

Defendant.

CR 19–88–BLG–SPW–2

ORDER

Following the appointment of counsel, (Docs. 146, 147), on May 8, 2026, Defendant Byrne Martin Mestas filed a motion under 18 U.S.C. § 3582(c)(1)(A) to reduce a 180-month federal drug sentence, (Doc. 156; *see* Doc. 117 (Judg.)). Mestas' projected release date is April 5, 2031. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed Jul. 24, 2026). The government opposes. (Doc. 158.) For the reasons stated below, Mestas' motion is granted.

**ANALYSIS**

The First Step Act of 2018 gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons ("BOP") and the reduction: (1) is consistent with the applicable policy statements of the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary

and compelling reasons." 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam). The Court must also find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG §1B1.13(a)(2).

Here, Mestas argues that his advanced age and medical issues qualify as extraordinary and compelling reasons warranting early release. He is correct.

## I. Exhaustion of Administrative Remedies

A defendant may only file a motion for compassionate release with the district court once the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Mestas filed requests for relief with the warden in 2021 and 2023, both of which were denied. (Doc. 158-1 at 2). Mestas has therefore exhausted the administrative remedies as required by statute.

## II. Extraordinary and Compelling Reasons

While the First Step Act does not define "extraordinary and compelling reasons," the Sentencing Commission provides explicit examples of such circumstances. *See* USSG §1B1.13. Relevant here, extraordinary and compelling reasons exist if "[t]he defendant is suffering from a terminal illness (*i.e.*, a serious

and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." §1B1.13(b)(1)(A). Extraordinary and compelling reasons also exist where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . [or] experiencing deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." §1B1.13(b)(1)(B). Finally, a catchall provision in §1B1.13(b) provides for such "other circumstances or combination of circumstances" that are cumulatively "similar in gravity" to those enumerated above. §1B1.13(b)(5).

Mestas is 69 years old and suffers from several chronic medical issues including stage IV kidney disease, an abdominal aortic aneurysm that has grown significantly, heart failure, and cardiac arrhythmia. (*See* Doc. 156 at 5, 19–20.) The government concedes that Mestas "has significant, and ongoing, health problems" that "have presented a potential 'extraordinary and compelling' reason for his release." (Doc. 158 at 7–8). Mestas has shown that he suffers from multiple health conditions that may be terminal and are at least serious enough to

substantially diminish his ability to provide self-care within the environment of a correctional facility. (*See e.g.*, Doc. 156 at 13-14 ("In January, 2024, Mr. Mestas suffered a heart attack. . . Mr. Mestas had severe sleep apnea but was intolerant to a CPAP machine. . . In May, 2024, Mr. Mestas nearly fainted while he was sitting. . . Staff found him seated on the floor, tachycardic.")) These are extraordinary and compelling reasons for release.

### III. Section 3553(a) Factors

Nevertheless, demonstrating an extraordinary and compelling reason to reduce a sentence meets only one element of § 3582(c)(1)(A). To determine whether relief is appropriate, a court must also consider the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. *See* 18 U.S.C. § 3553(a)(1), (2). Courts may also consider the advisory Guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).

Mestas pled guilty to conspiracy to distribute methamphetamine in or about

Billings, Montana in 2014 and 2015, (Docs. 88, 90, 91), and was held responsible for 4.5 kilograms of methamphetamine, (*see* PSR ¶¶ 14, 21; Doc. 118 at 1 (adopting presentence investigation report without change)). The Court reduced the base offense level by three points based on Mestas' acceptance of responsibility under §3E1.1. (PSR ¶¶ 27–28.) This resulted in a total offense level of 35. (*Id.* ¶ 29.) Mestas prior felony convictions for receipt of stolen property in 2009 and possession of controlled substances for sale in 2012, (*Id.* ¶¶ 34–35)—and three associated probation violations—resulted in a criminal history category of III. A total offense level of 35 and criminal history category of III resulted in an advisory Guideline range of 210 to 262 months. (PSR ¶ 78.) The government sought a sentence on the low end of Mestas' Guideline range, (Doc. 105 at 6-7), and he was sentenced to 180 months, (Doc. 117 at 2). The Court's variance from the Guideline range was based on, *inter alia*, Mestas' health, age, and drug or alcohol dependence. (Doc. 118 at 3–4.)

Mestas argues that the 70 months he has served adequately reflects the seriousness of the offense and affords adequate deterrence, that the public will be protected from the already-low risk of recidivism by conditions of supervised release, and that Mestas has taken advantage of training and educational opportunities while incarcerated. (Doc. 156 at 26–28.) Mestas also argues that the 96-month sentence of his co-defendant creates a sentencing disparity that weighs in

favor of his release, as does his overall poor medical condition. (*Id.* at 29.)

In sentencing Mestas, the Court did "not see the benefit of sending the defendant to what would most likely be a life sentence if a sentence within the [G]uideline range is imposed." (Doc. 118 at 4.) Given his rapidly declining health, it is now likely that even the sentence imposed would be a life sentence. This outcome, however, is unnecessary for Mestas' term of imprisonment to reflect the seriousness of the offense or to maintain deterrence. These elements are satisfied by Mestas' 70-month sentence, which has likely been exceptionally difficult because of his medical conditions. No additional period of incarceration is necessary to provide Mestas with needed educational or vocational training, medical care, or other correctional treatment and, as Mestas' co-defendants received significantly lesser sentences, (*see* Docs. 109, 127), reducing Mestas' sentence would not result in an unwarranted sentencing disparity.

Furthermore, analysis of Mestas' danger to the community under 18 U.S.C. § 3142(g)[1] does not preclude his release, as his health substantially mitigates the risk of recidivism. Section 3142(g) lists four factors a court must consider in assessing the safety of the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the

[1] USSG §1B1.13(a)(2) requires that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and record concerning appearance at court; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4). While Mestas has a serious criminal history and was involved in the distribution of a dangerous drug in the Billings area, his likely-terminal illnesses and diminished physical capacity make it unlikely that he could participate in widespread drug distribution while under supervised release. Thus, on balance, the § 3142(g) factors do not preclude early release.

Although Mestas has a serious criminal history, his rapidly declining health is an extraordinary and compelling circumstance that significantly reduces his threat to the community and likely transforms his current sentence into a life sentence. Given these circumstances, reducing Mestas' sentence to time served is appropriate here.

## CONCLUSION

Accordingly, IT IS ORDERED:

1. Mestas' motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 156) is GRANTED.

2. As of the date of this Order, Mestas' custodial sentence is REDUCED

to time served. His five-year term of supervision remains unchanged.

3. This Order is STAYED for up to 21 days to allow the United States Probation Office time to verify Mestas' residence and establish a release plan, with preference for placement in a pre-release center or home confinement; to make appropriate travel arrangements; and to ensure Mestas' safe release. The Clerk is therefore directed to inform the Probation Office of the entry of this Order.

4. Mestas shall be released as soon as a residence is verified, a release plan is established, and appropriate travel arrangements are made.

5. If more than 21 days are needed to accomplish Mestas' release, the United States must so notify the Court and demonstrate good cause why the stay of this Order should be extended.

6. The United States Probation Office shall review Mestas' conditions of supervised release. If modifications are needed, the Probation Office shall notify the Federal Defenders of Montana. Counsel will be appointed to represent Mestas.

7. Mestas must provide the Court with the complete address where he will reside upon release.

DATED this 29th day of July, 2026.

Susan P. Watters

Susan P. Watters, District Judge
United States District Court